IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

RAY DeFOREST,
       Plaintiff,

v.                                 Case No. 3:08cv498/MCR/EMT

JOHNNY CHISHOLM GLOBAL EVENTS, LLC;
CHISHOLM PROPERTIES CIRCUIT EVENTS, LLC;
JOHNNY CHISHOLM, individually;
and
BOBBY WARNER, individually,
       Defendants.
_____/

## ORDER, REPORT AND RECOMMENDATION

      In this diversity action Plaintiff Ray DeForest ("Plaintiff") sues Defendants Johnny Chisholm Global Events, LLC ("Global Events"); Chisholm Properties Circuit Events, LLC ("CPCE"); Johnny Chisholm ("Chisholm"); and Bobby Warner ("Warner"). The matter has been referred to the undersigned by the district court for all pretrial proceedings, including the issuance of preliminary orders, the conduct of necessary hearings, and—with respect to any dispositive motions—the filing of a report and recommendation containing proposed findings of fact and conclusions of law (*see* related case, Bardfield v. Chisholm, 3:09cv232/MCR/EMT, Doc. 50). *See also* N.D. Fla. Loc. R. 72.2(E); 28 U.S.C. § 636(b)(1)(B)(C), and Fed. R. Civ. P. 72(b). Now before this court are "Plaintiff's Motion for Entry of Default Judgment Against Defendant Johnny Chisholm" (Doc. 100); Chisholm's motion for leave to file a response to Plaintiff's motion out-of-time (Doc. 114) and Chisholm's proposed response (Doc. 112); Plaintiff's response in opposition to Chisholm's motion (Doc. 115); and Plaintiff's reply to Chisholm's proposed response (Doc. 116). The court also addresses "Plaintiff's Amended Motion for Entry of Default Judgment Against Johnny Chisholm

Global Events, LLC, and Chisholm Properties Circuit Events, LLC" (Doc. 98). For the reasons set forth below, the court denies Chisholm's motion for leave to file out-of-time. Additionally, the court recommends that Plaintiff's motion for default judgment against Chisholm be denied and that his amended motion for default judgment against Global Events and CPCE be granted in part as to Global Events only.

## Background

Plaintiff alleges the following facts in his third amended complaint, which he filed May 29, 2009 (Doc. 63). Chisholm produces parties for gays and lesbians, including the "One Mighty Weekend" event held at Disney World and other theme parks in Orlando, Florida. In January 2007 Chisholm approached Plaintiff about obtaining $150,000.00 to bring a similar event to the Disneyland Resort in Paris, France, in June 2007, a one-night party called the "One Mighty Party Paris." Relying on Chisholm's positive financial projections and representations regarding the Paris event (including a budget of less than 1.5 million dollars), claims of extensive party promotion experience, and assurances that the party would be successful, Plaintiff agreed to invest $150,000.00. Under the terms of the agreement the parties reached, Plaintiff was to receive the return of his principal "unequivocally," a 20% interest in Global Events, and, as funds permitted, a weekly salary of $2000.00 (Doc. 63 at 3). A February 27, 2007, notarized and signed statement memorialized the terms of the parties' agreement.

According to Plaintiff, although he was promised a copy of the event operating agreement and an insurance policy on Chisholm's life, neither was ever provided to him. Also, Plaintiff alleges, soon after accepting his $150,000.00, Chisholm began diverting the funds to other entities he owned, including CPCE, without Plaintiff's knowledge. Plaintiff asserts these entities were mere shells established to create the appearance of legitimacy to potential investors and to perpetuate a fraud against them. Among other acts of malfeasance committed in connection with the production of the Paris party, Plaintiff contends that Chisholm converted, mismanaged, and hid the money Plaintiff invested, as well as commingled the funds with those of other Chisholm business entities and paid some of his own personal expenses.

Plaintiff alleges that at some point Chisholm sold one-half of his shares in Global Events to

Warner, a transaction Chisholm did not inform Plaintiff of in advance. Following Warner's purchase of the interest in Global Events, the commingling of funds among Chisholm entities and mismanagement of the "One Might Party Paris" event continued. Chisholm and Warner also repeatedly refused to give Plaintiff access to the event books or to inform him of business developments. Plaintiff became concerned about the event due to slow sales and lack of adequate promotion and marketing, but his complaints were ignored. Chisholm and Warner continued their reckless financial practices, including failing to pay promoters and advertisers. Plaintiff also learned that promoters in Europe were advising against the event due to the financial malfeasance of Chisholm and Warner.

In an apparent effort to save the event, Warner and Chisholm attempted to revamp the party and increase the budget, including—without Plaintiff's knowledge or consent—by hiring entertainer Mariah Carey to perform at the event for approximately 1.5 million dollars. This revised plan, including its huge budget increase, was contrary to the representations on which Plaintiff had originally based his decision to invest in the event. Still without advising Plaintiff of their plan to expand the party, Defendants sought to persuade Plaintiff to sell his interest in Global Events back to the company. Defendants represented that they could not obtain any additional investments or financing for the Paris event unless Plaintiff was willing to relinquish his shares. Defendants pressured Plaintiff to make an immediate decision to sell his interest, threatening to rescind the offer if he did not act quickly. On May 25, 2007, Global Events and Plaintiff entered into an agreement pursuant to which Plaintiff agreed to convey to Global Events his 20% membership interest in the company for $160,000 (to be paid within forty-five days of the date of the agreement), plus an additional payment of $15,000 (to be paid within thirty days after the initial period). Chisholm personally guaranteed the agreement. Although Plaintiff had been informed that Warner would not invest in Global Events unless Plaintiff's interest in the company had first been cleared, Warner in fact had invested $350,000.00 in the venture on April 3, 2007, well before the May 25, 2007, buy-back agreement was executed; moreover, Defendants did not, as they had represented to Plaintiff, ever seek outside financing. According to Plaintiff, the purpose behind Warner and Chisholm's actions was to gain more equity in Global Events as they redesigned the event to include a high

profile entertainer, a step they believed would make the event more profitable for themselves. Chisholm and Warner later acknowledged that the buy-back had been completed and portrayed Plaintiff as a former partner; further, they maintained that they owned all shares of Global Events and would soon be paying Plaintiff what he was owed. Months later, however, after putting Plaintiff off repeatedly, Chisholm informed Plaintiff that he would not be able to honor their agreement due to huge losses from the "One Mighty Party Paris" event, which Plaintiff asserts failed due to Defendants' negligence and fraudulent actions. According to Plaintiff, Defendants now take the position that Plaintiff's Global Event shares were returned to him, rather than bought back by Global Events.[1] Plaintiff has not received his original investment of $150,000.00 or the $175,000.00 promised in the agreement to purchase his shares, and certain salary checks issued to him by Global Events were rejected by the bank due to insufficient funds.

The following is taken from orders and submissions by the parties that are available on the court's electronic docketing system. This case was commenced on October 30, 2008, when Plaintiff filed his initial complaint against Defendants Chisholm and Global Events (Doc. 3). Chisholm and Global Events, through counsel, responded by filing a motion to dismiss (Doc. 11) [later withdrawn (*see* Docs. 15, and 16)], and they also filed a corporate disclosure statement (Doc. 8). Plaintiff filed a first amended complaint on November 26, 2009 (Doc. 12), which Chisholm and Global Events answered (Doc. 13). Plaintiff filed a second amended complaint on January 1, 2009 (Doc. 18), which Chisholm and Global Events answered (Doc. 20; amended answer at Doc. 31). On January 20, 2009, in response to the district court's initial scheduling order (Doc. 14), the parties filed a joint scheduling report (Doc. 21), following which the district court entered a final scheduling order and mediation referral (Doc. 22). In a joint motion filed April 1, 2009, the parties requested an enlargement of time in which to complete discovery and mediation (Doc. 39), which motion the district court granted (Doc. 40); the district court also granted another joint request to extend

---

[1] Plaintiff does not elaborate on this allegation in the "General Allegations" section of the third amended complaint. In his amended motion for default judgment against the corporate Defendants, however, he explains that at the time Chisholm told him he would be unable to honor the agreement the reason given was that Chisholm's personal guarantee to repay Plaintiff was contingent on Chisholm's obtaining a mortgage. According to Plaintiff, Chisholm has never produced evidence to substantiate that defense and the agreement does not refer to any such contingency (Doc. 98 at 15–16).

discovery and other pretrial deadlines (Docs. 41, 42). On April 13, 2009, Plaintiff filed a motion to compel production of documents (Doc. 43), to which Chisholm and Global Events responded (Doc. 48). This court denied the motion without prejudice to filing a second motion as to those matters the parties had not fully resolved (Doc. 50). Chisholm and Global Events filed two motions to quash subpoenas, and—through their counsel on behalf of certain purported non-parties—an additional response required by the court (Docs. 51, 55, 57), to which Plaintiff responded (Doc. 58). This court denied the motions to quash (Docs. 59, 65). On May 29, 2009, Plaintiff filed a second motion to compel (Doc. 61), and a third amended complaint which named as Defendants Chisholm, Global Events, Warner, and CPCE (Doc. 63).[2] Following a response by Chisholm and Global Events, this court granted Plaintiff's second motion to compel (Doc. 69).[3] On June 17, 2009, Chisholm, Global Events, and CPCE answered the third amended complaint (Doc. 72).

On July 17, 2009, the district court granted the motion of defense counsel to withdraw as the legal representative of Chisholm, Global Events, and CPCE, in part directing that these Defendants had thirty days in which to retain substitute counsel (Doc. 84). Among other matters, the district court noted that if new counsel did not timely appear it would assume that Chisholm had elected to proceed pro se and that the "corporate defendant[s] ha[d] no intention of defending" (*id*). Accordingly, the court instructed, Plaintiff could then move for such relief as he deemed appropriate. To date, no new counsel has appeared for Chisholm or either of the corporate Defendants.[4]

Plaintiffs filed a motion for entry of default judgment against Global Events and CPCE on

---

[2] The third amended complaint contains eleven counts against various of the Defendants: Count I (fraud in the inducement); Count II (conspiracy to defraud); Count III (conversion); Count IV (unjust enrichment); Count V (breach of contract); Count VI (breach of contract); Count VII (breach of fiduciary duty); Count VIII (breach of duty of loyalty and care under Fla. Stat. § 608.4425); Count IX (violation of Fla. Stat. § 608.410, inspection of records); Count X (civil theft under Fla. Stat. § 772.11); and Count XI (violation of Fla. Stat. § 517.301(1)(a), Securities and Investor Protection Act). Plaintiff seeks varied relief, including compensatory and treble damages, equitable relief, injunctive relief, costs, and attorney's fees.

[3] In granting the motion the court noted that sanctions might be imposed (Doc. 69). Plaintiff filed documents in support of an award (Doc. 77), and Chisholm and Global Events filed a response in opposition (Doc. 80). The court this date by separate order has awarded $2415.00 in attorneys' fees to Plaintiff.

[4] Additionally, although Warner has been served with process (Doc. 110), and she has filed an answer to the third amended complaint (Doc. 111), no attorney has appeared in this case on Warner's behalf.

August 18, 2009 (Doc. 90). On August 24, 2009, the district court referred this matter for further proceedings to the undersigned due to the pro se status of at least one party in the case (*see* Bardfield v. Chisholm, 3:09cv232/MCR/EMT, Doc. 50). This court directed Plaintiff to submit a supplemental memorandum in support of his motion for default judgment and permitted him to submit evidence in support of his request for an award of damages (Doc. 96). On October 5, 2009, Plaintiff filed an amended motion for entry default judgment against Global Events and CPCE (Doc. 98), and a motion for entry of default judgment against Chisholm individually (Doc. 100), along with evidentiary support for his motions (Docs. 99, 101, and 102). The court directed Chisholm to respond to the motion for entry of default judgment (Doc. 103), but he failed to timely do so.

On October 28, 2009, the court entered an order noting that in Bardfield v. Chisholm, 3:09cv232/MCR/EMT, CPCE had filed a suggestion of bankruptcy, causing that case to be stayed as to CPCE (Doc. 104).[5] The court further noted that although no suggestion of bankruptcy had been filed by CPCE in the instant case, technically none was required for the automatic stay to be effective in both cases. The court stated that the stay thus would apply to CPCE in this case and remain in effect until CPCE's bankruptcy case had been disposed of by the bankruptcy court. For prudential reasons the court advised that it would stay the entire case but it invited the parties to file objections if they wished (*id.*). Upon objection by Plaintiff (Doc. 105), the court lifted the stay as to Chisholm and Warner (Doc. 106).[6]

On March 22, 2010, Chisholm submitted to the clerk for filing an untimely response to the motion for default judgment against him (Doc. 112). As permitted by the court (Doc. 113), Chisholm then filed a motion for leave to file the response out-of-time (Doc. 114). On April 14, 2010, Plaintiff filed a response in opposition to Chisholm's motion (Doc. 115), and, with leave of court, a reply to the response (Doc. 116).

---

[5] Similar to this case, the Bardfield case was also stayed in its entirety initially but later the stay was modified to apply only to CPCE (*see* Bardfield v. Chisholm, 3:09cv232/MCR/EMT, Doc. 66).

[6] Plaintiff voiced no objection and made no other response to the court's order lifting the stay as to Chisholm and Warner only. The court concludes, however, that the stay should also be lifted as to Global Events, as to which no suggestion of bankruptcy has been filed. The court therefore will address Plaintiff's amended motion for default judgment against the corporate Defendants Global Events and CPCE (Doc. 98), but only to the extent the motion pertains to Global Events.

## Discussion

I.  Chisholm's Motion for Leave to File Untimely Response to Motion for Default Judgment

Chisholm states in his motion that he has been without counsel since December 19, 2009, when the district court permitted his counsel to withdraw.[7]  He further states that although he has contacted four Pensacola area attorneys (and continues to communicate with other attorneys), he cannot afford to pay the retainers demanded by the attorneys and thus he has been unable to hire new counsel.  Without counsel, Chisholm submits, he has been unable to respond to Plaintiff's motion for entry of default judgment or the court's orders.[8]  According to Chisholm, he expects to be able to obtain legal assistance on a "piecemeal basis, even if he cannot retain counsel to appear as his attorney, and expects, therefore to be able to mount a defense" (Doc.  81 at 2).

Federal Rule of Civil Procedure 6(b)(1) provides that when a party files a motion after the time for doing so expires, a court may, for good cause, extend the time "if the party failed to act because of excusable neglect."  Fed. R. Civ. P. 6(b)(1)(B).  In Pioneer Inv. Servs. Co. v. Brunswick Assocs., 507 U.S. 380, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993), the Supreme Court held that neglect encompasses "inadvertence, mistake, or carelessness, as well as . . . intervening circumstances beyond the party's control."  Id. at 388.  Whether neglect is excusable is an equitable determination "taking account of all relevant circumstances surrounding the party's omission."  Id. at 395.  The Court identified four factors to guide courts in determining whether excusable neglect has occurred: "the danger of prejudice to the [other party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith."  Id.; see also Walter v. Blue Cross & Blue Shield United of Wisconsin, 181 F.3d 1198, 1201 (11th Cir. 1999).  Although under Rule 6(b) the court has the discretion to accept an untimely filing if excusable neglect is

---

[7]  The docket reflects that the actual date that counsel was permitted to withdraw was July 17, 2009 (Doc. 84).

[8]  The court notes that Chisholm contends default judgment should not be entered against him because his failure to respond in this case has not been intentional and willful, he has a meritorious defense, Plaintiff has not been prejudiced by his failure to file a timely response to the motion for default judgment, and it would be "manifestly unjust" to permit an award against him of treble damages without permitting him to defend (Doc. 114 at 2–3).  The court does not address the substance of these arguments because they pertain to opposition of the motion for default judgment, not to Chisholm's failure to file a timely response.

shown, the rule does not require the  court to do so.  *See* <u>Lujan v. Nat'l Wildlife Fed'n</u>, 497 U.S. 871, 896 & n.5, 110 S. Ct. 3177, 3192 & n. 5, 111 L. Ed. 2d 695 (1990) (explaining that Rule 6(b) confers discretion on the district court to permit untimely filings, but does not compel the district court to accept them).

Chisholm's delay in responding to the motion for default judgment has been lengthy and had the potential to impact the proceedings.  Most significant, however, is that Chisholm has offered no good reason for his failure to timely act, much less shown that this failure was not within his reasonable control.  <u>Pioneer Inv. Servs. Co.</u>, 507 U.S. at 385.  Indeed, the contrary seems true, as Chisholm has not suggested that anything he has done recently regarding obtaining legal representation he could not have done earlier.  At the very least, Chisholm could have filed a response of some sort to the motion for default judgment against him far sooner (either pro se in fact or—as appears to be the case now—with the assistance of an attorney, although no counsel has yet made an appearance on his behalf since his prior counsel withdrew[9]).  Finding no excusable neglect, the court therefore denies Chisholm's motion for leave to file a response out-of-time to Plaintiff's motion for entry of default judgment.[10]  Chisholm's proposed response (Doc. 112) to the motion, and Plaintiff's reply (Doc. 116), therefore shall not be considered.

## II.    Motions for Entry of Default Judgment

---

[9]  As required by <u>Haines v. Kerner</u>, 404 U.S. 519, 520, 92 S. Ct. 594, 595–96, 30 L. Ed. 2d 652 (1972), this court interprets pleadings filed pro se liberally.  If Chisholm submits pleadings that are represented as being pro se in nature but in actuality have been drafted by an attorney, Chisholm would receive an unfair advantage in that his pleadings would be construed liberally while those filed by Plaintiff would be held to a higher level of scrutiny; this advantage could affect other aspects of the litigation as well.  Moreover, this sort of "ghost-writing" has been deemed a deliberate evasion of the responsibilities imposed on counsel by Federal Rule of Civil Procedure 11 and, as such, has been widely condemned as unethical.  *See, e.g.,* <u>Duran v. Carris</u>, 238 F.3d 1268, 1273 (10th Cir. 2001); <u>Ellis v. Maine</u>, 448 F.2d 1325, 1328 (1st Cir. 1971); <u>Bush v. Adams</u>, 2010 WL 1253990 (E.D. Va. 2010);  <u>Wesley v. Don Stein Buick, Inc.</u>, 987 F. Supp. 884, 886 (D. Kan 1997); <u>Ricotta v. State</u>, 4 F. Supp. 2d 961, 987 (S.D. Cal. 1998); <u>Gold v. Dalkon Shield Claimant's Trust</u>, 1998 WL 422900 (D. Conn. 1998).  Any counsel hired by Chisholm in connection with proceedings before the court, whether to represent him on a "piecemeal" basis or otherwise, should conduct him or herself appropriately, *i.e.*, by entering an appearance.

[10]   Even if Chisholm's motion to file a response out-of-time were not denied on its merits, in light of the court's conclusion that Plaintiff's motion for default judgment against him should be denied on grounds not raised by Chisholm, his motion is effectively moot.

Plaintiff seeks entry of default judgment against Chisholm individually on five of the eleven counts of the complaint (*see* Doc. 100 at 2).[11]  Plaintiff argues that the court may enter default judgment under its inherent authority to sanction Chisholm for his failure to comply with court orders; he also relies on the court's authority pursuant Fed. R. Civ. P. 37 to sanction Chisholm for the failure to cooperate in the discovery process.  Additionally, Plaintiff maintains that under Fed. R. Civ. P. 55 entry of default judgment is appropriate in light of Chisholm's failure to defend this action.[12]  Plaintiff seeks entry of default judgment against Global Events on essentially the same grounds and as to the same counts of the third amended complaint (*see* Doc. 98 at 3).  After outlining the applicable law, the court addresses the motions and the contentions each contains.[13]

A.  Applicable Law

1.  Court's Inherent Power/Federal Rule of Civil Procedure 37

Pursuant to their inherent power courts have the authority to impose sanctions for litigation misconduct.  Chambers v. NASCO, Inc., 501 U.S. 32, 51, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991); Eagle Hosp.  Physicians, LLC v. SRG Consulting, Inc., 561 F.3d 1298, 1306 (11th Cir. 2009); In re Sunshine Jr. Stores, 456 F.3d 1291, 1304 (11th Cir. 2006).  This inherent power derives from the court's need "to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases."  Chambers, 501 U.S. at 43 (quotation marks and citation omitted).  It is well-settled that the entry of a judgment by default is available to facilitate the exercise of the court's inherent power to control its docket.  Wahl v. McIver, 773 F.2d 1169, 1174 (11th Cir. 1985) (citing Flaksa v. Little

[11]  These include Counts I through IV and Count X.  Thus Plaintiff does not seek default judgment as to Counts V through IX or Count XI.

[12]  Plaintiff states that he incorporates by reference the arguments made in his amended motion for default judgment against Global Events and CPCE (*see* Doc. 100 at 1).  Plaintiff did not seek leave of court to incorporate the arguments of one motion into another motion, which in any event is a practice courts of this district rarely permit for reasons of convenience as well as to enforce page-limitation restrictions.  In any event, as noted, the court addresses the amended motion for default judgment against Global Events and CPCE (Doc. 98) and, in connection with the motion against Chisholm, has reviewed any relevant arguments it contains.

[13]  Based on the record before it, the court is satisfied that subject matter jurisdiction in this case is proper pursuant to 28 U.S.C. § 1332.  The court further concludes that the record is sufficient to support both personal jurisdiction and venue.  In addressing the pending motion for entry of default judgment the court applies the substantive law of Florida and federal procedural law. *See* Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938) (a federal court sitting in diversity must apply state substantive law and federal procedural law).

River Marine Construction Co., 389 F.2d 885, 887 (5th Cir. 1968)). The power to impose sanctions, however, "must be exercised with restraint and discretion." Roadway Express, Inc. v. Piper, 447 U.S. 752, 764, 100 S. Ct. 2455, 65 L. Ed. 2d 488 (1980). The Eleventh Circuit has noted that "'[t]he key to unlocking a court's inherent power is a finding of bad faith.'" Byrne v. Nezhat, 261 F.3d 1075, 1106 (11th Cir. 2001) (quoting Barnes v. Dalton, 158 F.3d 1212, 1214 (11th Cir. 1998)); *see also* In re Mroz, 65 F.3d 1567, 1575 (11th Cir. 1995) ("Invocation of a Court's inherent power requires a finding of bad faith."). Bad faith is present "if a court finds 'that fraud has been practiced upon it, or that the very temple of justice has been defiled,'" or if "a party 'shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order.'" Chambers, 501 U.S. at 46 (quotations and citations omitted). In general, "the severe sanction of a dismissal or default judgment is appropriate only as a last resort, when less drastic sanctions would not ensure compliance with the court's orders." In re Sunshine Jr. Stores, Inc., 456 F.3d at 1306 (internal citation and quotation omitted). When exercising its inherent power, the court must comply with due process in determining bad faith and affixing sanctions. Chambers, 501 U.S. at 50. Because the inherent power sanctions of dismissal and default serve the same purposes as contempt, in other words, "vindicat[ing] the District Court's authority over a recalcitrant litigant," *id.* at 53 (internal quotation and citation omitted), these sanctions require the same standard of proof, which is clear and convincing evidence. Shepherd v. American Broadcasting Companies, 62 F.3d 1469, 1472–73 (D.C. Cir. 1995); Qantum Comms. Corp. v. Star Broadcasting, Inc., 473 F. Supp. 2d 1249, 1277 (S.D. Fla. 2007) (finding by clear and convincing evidence that defendant engaged in abusive conduct and that no sanction less than default judgment and fees would sufficiently deter and punish such conduct); Chemtall, Inc. v. Citi-Chem, Inc., 992 F. Supp. 1390, 1408 (S.D. Ga. 1998) (observing that district court may use its inherent power to enter a default judgment only if it finds by clear and convincing evidence that the abusive behavior occurred and that lesser sanction would not suffice). Additionally, it is well-settled that Rule 37 confers broad discretion upon the district court to fashion appropriate sanctions for the violation of discovery orders. *See* United States v. Certain Real Property Located at Route 1, Bryant, Ala., 126 F.3d 1314, 1317 (11th Cir. 1997) (citing Malautea v. Suzuki Motor Co., 987 F. 2d 1536, 1542 (11th Cir. 1993)). This discretion, however,

is not unbridled. <u>Wouters v. Martin County</u>, 9 F.3d 924, 933 (11th Cir. 1993). Entering a default judgment pursuant to Rule 37 is appropriate as "only if noncompliance with discovery orders is due to willful or bad faith disregard for those orders." <u>Cox v. American Cast Iron Pipe Co.</u>, 784 F.2d 1546, 1556 (11th Cir. 1986). It is an abuse of discretion for the court to enter a default judgment if lesser sanctions would suffice. *Id.*

2.      Federal Rule of Civil Procedure 55

Rule 55 sets out a two-step procedure for obtaining a default judgment. First, when a defendant fails to plead or otherwise defend the lawsuit, the clerk of court is authorized to enter a clerk's default. Fed. R. Civ. P. 55(a). Second, after entry of the clerk's default, if the defendant is not an infant or an incompetent person, the court may enter a default judgment against the defendant for not appearing or defending. Fed. R. Civ. P. 55(b)(2). Thus, by its terms, Rule 55 characterizes an entry of default and a default judgment as two distinct events. *See* 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2682 (3d ed. 2007) ("Prior to obtaining a default judgment under either Rule 55(b)(1) or Rule 55(b)(2), there must be an entry of default as provided by Rule 55(a)"); *see also* <u>Sun v. United States</u>, 342 F. Supp. 2d 1120, 1124 n.2 (N.D. Ga. 2004) (entry of default is "a prerequisite to a default judgment"). The law is clear that these two separate steps cannot be combined into one. *See, e.g.*, <u>Ramada Franchise Systems, Inc. v. Baroda Enterprises, LLC</u>, 220 F.R.D. 303, 304 (N.D. Ohio 2004) ("An entry of default and a default judgment are distinct events that require separate treatment."). Rather, the clerk's entry of default must precede an application to the district court for entry of default judgment. *See, e.g.*, <u>Fairman v. Hurley</u>, 373 F. Supp. 2d 227, 231 (W.D.N.Y. 2005) ("Without first obtaining an entry of default, plaintiff cannot obtain a default judgment from this Court").

After a default has been entered pursuant to Rule 55(a), in order to determine whether the moving party is entitled to default judgment pursuant to Rule 55(b) the court must review the sufficiency of the complaint and its underlying substantive merits. 10 James Wm. Moore et al., <u>Moore's Federal Practice</u> § 55.20[2][b] (3d ed. 2007); <u>Chudasama v. Mazda Motor Corp.</u>, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997). In defaulting, a defendant "admit[s] the plaintiff's well-pleaded allegations of fact" for purposes of liability. <u>Buchanan v. Bowman</u>, 820 F.2d 359, 361 (11th Cir.

1987). If the facts alleged in the complaint are sufficient to establish liability, the court must then conduct an inquiry to ascertain the amount of damages. <u>Arista Records, Inc. v. Beker Enter., Inc.</u>, 298 F. Supp. 2d 1310, 1312 (S.D. Fla. 2003). An evidentiary hearing may be required to determine the amount of damages; however, where the record is sufficient, a court may be able to determine damages without a hearing. *See* <u>Sec. & Exch. Comm'n v. Smyth</u>, 420 F.3d 1225, 1231, 1232 n.13 (11th Cir. 2005) (stating that no hearing is necessary "when the district court already has a wealth of evidence from the party requesting the hearing, such that any additional evidence would be truly unnecessary to a fully informed determination of damages"); <u>Adolph Coors Co. v. Movement Against Racism and The Klan</u>, 777 F.2d 1538, 1544 (11th Cir. 1985). In other words, although a defaulted party admits well-plead allegations of liability, allegations relating to the amount of damages are not admitted by virtue of default. *See* <u>Smith v. Noso, Inc.</u>, 2007 WL 2254531 (M.D. Fla. 2007). Thus even in the default judgment context "[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters." <u>Anheuser Busch, Inc. v. Philpot</u>, 317 F.3d 1264, 1266 (11th Cir. 2003).

B.      Motion for Entry of Default Judgment Against Chisholm

Plaintiff contends that Chisholm "has violated at least four of this Court's Orders," including the July 17, 2009, order (Doc. 84); the September 15, 2009, order issued in the <u>Bardfield</u> case (<u>Bardfield v. Chisholm</u>, 3:09cv232/MCR/EMT, Doc. 54); the April 23, 2009, order denying without prejudice Plaintiff's first motion to compel (Doc. 50); and the June 15 2009, order granting Plaintiff's second motion to compel (Doc. 69).[14] Plaintiff further contends that Chisholm's failure to participate in discovery resulted in his having to file the second motion to compel and that Chisholm failed to comply with the court's directive in its June 4, 2009, order to provide the information specified in Plaintiff's subpoenas (Doc. 65, denying Chisholm's motion to quash). Plaintiff submits that Chisholm's violations of the court's orders resulted from his failure to preserve evidence or to make a diligent search for required documents. More specifically, Plaintiff contends

---

[14]  Plaintiff contends that Chisholm should have provided documentation related to certain mortgage applications Defendants have claimed to have made, information on certain mortgage brokers and John Stallings, and supplemental documentation pertaining to communications and transactions between Global Events and CPCE (Doc. 100 at 5–6).

the deposition testimony of Chisholm and his representatives (including his accountant, office administrator, and graphic designer), reflects that Chisholm destroyed, failed to properly maintain, or failed to make any attempt to locate the business records for the Paris event, the lack of which records has severely prejudiced Plaintiff's ability to prosecute his claims (*see* Doc. 100 at 6–8). Plaintiff contends that Chisholm "contumacious conduct and utter disregard of this Court's Orders and his discovery violations provide ample grounds to enter default judgment against him, and his prior disregard of this Court's Orders makes imposing additional lesser sanctions futile" (*id.* at 9). Plaintiff therefore submits that default judgment "pursuant to the Court's inherent power and FRCP 37(b)(2)(A)(i)-(vii), 37(d)(1)(A)(i)(ii) and 37(d)(3)" is warranted (*id.*).

First, Chisholm did not violate the July 17, 2009, order (Doc. 84). The district court stated that if counsel failed to timely appear on Chisholm's behalf, the court would assume he intended to proceed pro se. Chisholm was not ordered to file a response. When no counsel appeared, the court made the assumption that Chisholm, in his capacity as an individual Defendant, was representing himself. Next, although Plaintiff fails to identify any authority in support of this proposition of law, the court acknowledges that in weighing whether to impose sanctions it is permissible to consider a party's misconduct in a related case. *See* Atkins v. Fischer, 232 F.R.D. 116, 129–31 (D.D.C. 2005) (citation omitted). As the court has noted, the Bardfield case is related to this one to the extent the allegations against Chisholm are similar. Nevertheless, the court concludes Chisholm's failure to respond to the district court's order in the Bardfield case regarding the status of his efforts to obtain new counsel was not a particularly important event in the litigation and, in any event, did not significantly delay the proceedings. Additionally, in its April 23, 2009, order denying without prejudice Plaintiff's first motion to compel, this court merely "encouraged" Chisholm and the other Defendants to resolve this matter without further judicial involvement, noting their prior failure to comply with the court's directive and the possibility of having sanctions imposed against them for such conduct (Doc. 50 at 2 n.1). The court did not order Chisholm to do anything, and thus he did not violate any directive.

The matter of Chisholm's failure to comply with this court's June 4, 2009, order directing him to provide the information demanded in Plaintiff's subpoenas (Doc. 65), and its June 15 2009,

order granting Plaintiff's second motion to compel (Doc. 69) presents a more serious concern. The district court acts within its discretion in entering default judgment against a party who fails to comply with pre-trial discovery orders, *see* <u>Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee</u>, 456 U.S. 694, 705, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982), and here it is undisputed that Chisholm failed to comply with the two orders just identified. The inherent powers doctrine is most often invoked in cases in which a party commits perjury or destroys or alters evidence that "relates to the pivotal or 'linchpin' issue in the case." <u>Qantum Comms. Corp.</u>, 473 F. Supp. 2d at 1269 (citation omitted) (abusive conduct warranting entry of default judgment included lying under oath regarding key issue in case and failing to produce critical, potentially inculpatory documents during discovery); *see also* <u>Chemtall, Inc.</u>, 992 F. Supp. at 1410 (abusive conduct warranting entry of default judgment included lying under oath), and <u>Vargas v. Peltz</u>, 901 F. Supp. 1572, 1581–82 (S.D. Fla. 1995) (dismissing sexual harassment case for plaintiff's fabrication of evidence and lying under oath). There is no allegation, or evidence, in this case that Chisholm has committed perjury or doctored evidence. Plaintiff does assert that Chisholm failed to diligently look for and/or destroyed evidence sought in discovery, evidence Plaintiff contends is related to central issues of his case. In support, Plaintiff points to testimony that many of Chisholm's business records were lost when a computer crashed and that Chisholm never asked persons working for him to search for or preserve documents and failed to timely inform them of this lawsuit (Doc. 100 at 6–9).

While it is clear that Chisholm failed to comply with two of the court's discovery orders, based on the record before it this court cannot make a finding, under a standard of clear and convincing evidence, that Chisholm acted with the requisite bad faith necessary to punish him by entering the ultimate sanction of default judgment. In this court's view, the cited testimony does not establish, with evidence sufficient to satisfy this fairly demanding evidentiary standard, that Chisholm in fact acted in bad faith rather than negligently. The "[v]iolation of a discovery order caused by simple negligence, misunderstanding, or inability to comply will not justify a Rule 37 default judgment or dismissal." <u>Malautea v. Suzuki Motor Co., Ltd.</u>, 987 F.2d 1536, 1542 (11th Cir. 1993). The court likewise should not exercise its inherent power to enter the harsh sanction of default judgment for such conduct.

Plaintiff also seeks entry of default judgment against Chisholm pursuant to Federal Rule of Civil Procedure 55. Plaintiff has not requested, and the clerk has not entered, a default pursuant to Rule 55(a). As entry of default is a prerequisite to the entry of default judgment, Plaintiff's motion for entry of default judgment could be denied as premature. Sun, 342 F. Supp. 2d at 1124 n.2 (describing plaintiff's motion for default judgment as premature because he had failed first to obtain entry of default). Moreover, even if Plaintiff had obtained an entry of default against Chisholm—or the court now directed the clerk to enter it—entry of default judgment would not be appropriate at this time. As previously indicated, the "[e]ntry of judgment by default is a drastic remedy which should be used only in "extreme situations" or "exceptional circumstances." Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309, 1316–17 (11th Cir. 2002). The record reflects that, at least for as long as he had counsel through July 17, 2009, Chisholm actively defended this case and responded to court orders by filing a motion to dismiss and answers to Plaintiff's complaints, a joint scheduling report, joint motions for enlargement of time, responses to Plaintiff's motion to compel, and motions to quash. That Chisholm subsequently failed to respond to the court's order regarding the substitution of counsel when he was proceeding pro se or to timely attempt to respond to the motion for entry of default judgment did not significantly prejudice Plaintiff, if at all. Additionally, more recently Chisholm has attempted to defend the case by seeking to file out-of-time a response to Plaintiff's motion for default judgment. The facts of this case therefore do not appear to this court to constitute "exceptional circumstances" justifying entry of default judgment. Wahl, 773 F.2d at 1174. As a final matter weighing against entry of default judgment, the court is also mindful that in the Eleventh Circuit "there is a strong policy of determining cases on their merits" which results in "view[ing] defaults with disfavor." In re Worldwide Web Systems, Inc., 328 F.3d 1291, 1295 (11th Cir. 2003); *see also* Owens v. Benton, 190 Fed. App'x 762, 763 (11th Cir. 2006) (noting the "strong preference that cases be heard on the merits instead of imposing sanctions that deprive a litigant of his day in court"); Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. and Canada, 674 F.2d 1365, 1369 (11th Cir. 1982) (indicating that because the case involved "a default judgment there must be strict compliance with the legal prerequisites establishing the court's power to render the judgment").

For the foregoing reasons, this court concludes that entry of default judgment against Chisholm, whether pursuant to the court's inherent power, Rule 37, or Rule 55, is not warranted at this time.

B.      Amended Motion for Entry of Default Judgment Against Global Events[15]

In his amended motion Plaintiff submits that default judgment "is appropriate under Rule 55(a) and (b) and under the Court's inherent authority to manage its affairs for Defendants' failure to defend this action, including their disregard of this Court's Orders and failure to cooperate with a discovery plan" (Doc. 98 at 4).

The law is well settled that "a corporation is an artificial entity which cannot appear pro se in legal proceedings but must be represented by counsel." Fed. Trade Comm'n v. Gem Merch. Corp., 1995 WL 623168, at *1 (11th Cir. 1995) (per curiam), citing Palazzo v. Gulf Oil Corp., 764 F.2d 1381, 1385 (11th Cir. 1985)). Early in this litigation, and until its counsel was permitted to withdraw on July 17, 2009, Global Events actively defended this case. Nevertheless, despite being directed by the district court that substitute counsel must appear on its behalf no later than August 17, 2009, to continue its defense and being warned that Plaintiff would be permitted to move for appropriate relief if new counsel did not appear, Global Events has failed to obtain legal representation. This court concludes that entry of default therefore is warranted pursuant to Rule 55(a) for Global Events' failure to defend.[16]  Plaintiff, however, has failed to seek entry of default and, as the court has noted, without an entry of default pursuant to Rule 55(a) a default judgment pursuant to Rule 55(b) cannot be entered. Sun, 342 F. Supp. 2d at 1124 n.2 (describing plaintiff's motion for default judgment as premature because he had failed first to obtain entry of default).

---

[15] As noted, this action is stayed as to CPCE. The court therefore considers the amended motion for entry of default judgment as to Global Events only, as to which the action is not stayed.

[16] Although Chisholm has argued that he failed to comply with various of the court's orders because he could not afford to hire new counsel, a circumstance that presumably he would likewise argue applies to Global Events, financial hardship does not excuse the requirement that a corporation be represented by counsel. See Am. Res. Ins. Co., Inc. v. Evoleno Co., 2008 WL 4701350, at *2 n.2 (S.D. Ala. 2008) ("[D]efault judgment is proper even when the unrepresented artificial entity asserts impecuniousness"), citing Tropicana Prod., Inc. v. Vero Beach Groves, Inc., 1993 WL 73693, at *1, 5 (1st Cir. 1993); John's Insulation, Inc. v. L. Addison and Assoc., Inc., 156 F. 3d 101, 109 (1st Cir. 1998); Sheet Metal Workers' Internat'l Assoc. Local 18 v. Star Fire Fireplace Installation Inc., 2009 WL 1871740, at *1 (E.D. Wis. 2009).

Case No. 3:08cv498/MCR/EMT

Regardless, the court will direct the clerk to enter a default against Global Event pursuant to Rule 55(a), and it will proceed at this time to considering the amended motion for entry of default judgment against this Defendant.

The court must first determine whether the allegations of fact pertaining to Counts I through IV and Count X of the third amended complaint are well-pleaded and thus that Global Events should be deemed to have admitted these facts as true for purposes of liability.[17] Buchanan, 820 F.2d at 361; *see also* Tyco Fire & Sec., LLC v. Alcocer, 218 Fed. App'x 860, 863 (11th Cir. 2007) (noting that even though a default is not treated as an absolute confession of liability by the defendant or of the plaintiff's right to recover, a defaulted defendant is deemed to admit well-pleaded allegations of fact). Where a complaint fails to state a claim, a default judgment on the complaint may not stand. United States v. Kahn, 164 Fed. App'x 855, 858 (11th Cir. 2006).

Count I is a claim for fraud in the inducement.  Under Florida law, "[i]n order to state a cause of action for fraud in the inducement, a plaintiff must allege that 1) the representor made a misrepresentation of a material fact, 2) the representor knew or should have known of the falsity of the statement, 3) the representor intended that the representation would induce another to rely and act on it, and 4) the plaintiff suffered injury in justifiable reliance on the representation." Biscayne Inv. Group, Ltd. v. Guarantee Mgmt. Servs., Inc., 903 So. 2d 251, 255 (Fla. 3d DCA 2005).  Here, Plaintiff alleges that Chisholm and Global Events misrepresented the purpose of Plaintiff's $150,000.00 investment in the company—which was to produce the "One Mighty Party Paris"—because in fact Plaintiff's funds were diverted to other purposes unrelated to the Paris event, including transferring funds and paying expenses incurred by other entities owned by Chisholm or those of Chisholm himself.  Plaintiff also alleges that Chisholm and Global Events made misrepresentations to him in connection with the May 25, 2007, agreement to sell his interest in Global Events back to the company.  Plaintiff alleges that Defendants informed him Warner required Plaintiff's interest to be bought back before she would invest any funds in Global Event when in

---

[17] Accordingly, although relied upon by Plaintiff in his amended motion, in this particular inquiry the court does not consider Plaintiff's declaration or any documents other than the third amended complaint (and attachments).

fact, as of April 3, 2009, Warner had already invested $350,000.00. Defendants' real purpose in making such misrepresentation to Plaintiff, he alleges, was to regain a greater share of the equity in the company so that they themselves would benefit from expected increased profits derived from hiring a well-known talent to perform at the Paris party. These allegations appear to satisfy the first element of a fraudulent inducement claim, which is that the representor made a misrepresentation of a material fact . The second element is also satisfactorily alleged. With respect to the buy-back agreement, Defendants had to have known at the time the representation was made regarding Warner's alleged requirement that Plaintiff's interest in Global Events be cleared that in fact Warner had already invested; with respect to the initial agreement, Plaintiff's assertion that "[a]s soon as [Chisholm and Global Events] secured [Plaintiff's] money, [the] series of questionable payments or loans" commenced (Doc. 63 at 4) likewise implies that at the time of the representation Defendants knew the actual purpose to which they intended to put Plaintiff's money.[18] Plaintiff has also adequately alleged that Defendants intended that their false representations regarding the purpose of the funds and the purpose of the buy-back agreement would induce his reliance, first to invest his $150,000.00 and then to agree to sell his interest back to the Defendants. Plaintiff has also adequately alleged that he suffered injury through the loss of his funds.

Count II is a claim for conspiracy to defraud. Under Florida law, the elements of a civil conspiracy claim are: "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." UTC Indus., Inc. v. Presidential Fin. Corp., 976 So. 2d 92, 94 (Fla. 3d DCA 2008) (citations omitted); Raimi v. Furlong, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997). To succeed in a claim for conspiracy to defraud, a

---

[18] Global Events' General Ledger, which is attached to the third amended complaint as Exhibit D, is consistent with this allegation. It shows that Global Events had a negative balance as of January 10, 2007; a positive balance as soon as $100,000.00 of Plaintiff's investment was deposited on January 11, 2007; a continued positive balance upon additional deposits of $50,000.00 from Plaintiff through January 30, 2007; and numerous payments to Chisholm's other companies starting January 22, 2007 (as well as payments to others), shortly after Plaintiff's initial payment was made (see Doc. 63-4 at 1). By February 6, 2007, which was well before the parties' agreement was memorialized on February 27, 2007, the account once again showed a negative balance.

plaintiff must allege "an actionable underlying tort or wrong." <u>Posner v. Essex Ins. Co., Ltd.</u>, 178 F.3d 1209, 1218 (11th Cir. 1999) (citation omitted); *see also* <u>Blatt v. Green, Rose, Kahn & Piotrkowski</u>, 456 So. 2d 949, 950 (Fla. 3d DCA 1984) ("The gist of a civil action for conspiracy is not the conspiracy itself, but the civil wrong which is done pursuant to the conspiracy and which results in damage to the plaintiff"). In this case, Plaintiff asserts that Defendants "agreed and conspired together to defraud Plaintiff out of his 'ownership interest' [in Global Events] on May 25, 2007" (Doc. 98 at 20). He alleges that Defendants did so by representing that before they could obtain outside financing to go forward with the Paris party or Warner would invest in Global Events, Plaintiff had to relinquish his interest in the company. Plaintiff further alleges that well before May 25, 2007, however, Warner had already invested $350,000.00 in Global Events, and no outside financing was ever sought. Additionally, Plaintiff alleges that while Defendants were pushing Plaintiff to sell his interest in Global Events they were fraudulently transferring funds from the company to other Chisholm entities and revising the scope of the party to include Mariah Carey as the headliner, thereby misrepresenting the investment opportunity to Plaintiff and, ultimately, depriving him of his $150,000.00. These allegations appear sufficient to show an agreement between the Defendants to defraud Plaintiff of his ownership interest in Global Events by misrepresenting the need for and circumstances of relinquishing his interest in the company, which acts damaged Plaintiff. *See* <u>Charles v. Florida Foreclosure Placement Center</u>, 988 So. 2d 1157, 1160 (Fla. 3d DCA 2008) (finding that allegations that foreclosure assistance company lied to homeowner about helping her save title to her home in foreclosure while actually intending to defraud her of equity in the home and that company enlisted the assistance of others to carry out the scheme were sufficient to support homeowner's claim of civil conspiracy).

Count IV is a claim for unjust enrichment. A claim for unjust enrichment must satisfy the following elements: "1) the plaintiff has conferred a benefit on the defendant; 2) the defendant has knowledge of the benefit; 3) the defendant has accepted or retained the benefit conferred; and 4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it." <u>Della Ratta v. Della Ratta</u>, 927 So. 2d 1055, 1059 (Fla. 4th DCA 2006)

(citations omitted); *see also* Hillman Constr. Corp. v. Wainer, 636 So. 2d 576, 577 (Fla. 4th DCA 1994). "An action for 'unjust enrichment' exists to prevent the wrongful retention of a benefit, or the retention of money or property of another, in violation of good conscience and fundamental principles of justice or equity." Henry M. Butler, Inc. v. Trizec Prop., Inc., 524 So. 2d 710, 711 (Fla. 2d DCA 1988). A claim for unjust enrichment is based on a legal fiction created by courts to imply a contract. Tooltrend, Inc. v. CMT Tools, 198 F. 3d 802, 805 (11th Cir. 1999). As such, a claim for unjust enrichment derives not from a "real" contract but from a "quasi-contract." *Id.* Where there is an express contract between the parties, claims arising out of that contractual relationship will not support a claim for unjust enrichment. *See* Diamond "S" Dev. Corp. v. Mercantile Bank, 989 So. 2d 696, 697 (Fla. 1st DCA 2008) (citing cases in which Florida courts held that a plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter); *see also* Moynet v. Courtois, 8 So. 3d 377, 379 (Fla. 3d DCA 2009) (there can be no unjust enrichment claim when there is an express contract between the parties). When a defendant has given adequate consideration to someone for a benefit conferred, a claim for unjust enrichment necessarily fails. Am. Safety Ins. Co. v. Griggs, 959 So. 2d 322 (Fla. 5th DCA 2007).

Here, Plaintiff seeks to recover the $150,000.00 he paid to Defendants. To the extent Plaintiff alleges the existence of an express oral contract between the parties which provided that, in consideration for his payment he would receive a 20% share in Global Events and other benefits (a contract which was memorialized by Chisholm's February 27, 2007, memorandum and is attached as an exhibit to the third amended complaint), he fails to state a claim for unjust enrichment. *See* Diamond "S" Dev. Corp., 989 So. 2d at 697. Nevertheless, "[u]ntil an express contract is proven, a motion to dismiss a claim for . . . unjust enrichment on these grounds is premature." Williams, 725 So. 2d at 400. Thus, to the extent that Plaintiff pleads that no express contract existed, *see* Fed. R. Civ. P. 8(d)(2) ("[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically . . ."), the court concludes that his allegations may state a claim for relief: Plaintiff conferred a benefit on Defendants in the form of services and $150,000.00 in cash, they had knowledge of and retained the benefits conferred, and under the circumstances it would be

inequitable for Defendants to retain such benefits—as to which they did not give adequate consideration—without compensating Plaintiff for their fair value. <u>Della Ratta</u>, 927 So. 2d at 1059.

Count III of the third amended complaint is a claim for conversion, and Count X is a claim for civil theft. Conversion is defined as an act of dominion wrongfully asserted over another's property inconsistent with ownership. <u>Warshall v. Price</u>, 629 So. 2d 903 (Fla. 4th DCA 1993); *see also* <u>Star Fruit Co. v. Eagle Lake Growers, Inc.</u>, 33 So. 2d 858 (1948). A plaintiff must plead civil theft under Florida law by alleging the statutory elements of theft, as well as criminal intent. <u>Fla. Desk, Inc. v. Mitchell Int'l. Inc.</u>, 817 So. 2d 1059, 1060 (Fla. 5th DCA 2002); <u>Gersh v. Cofman</u>, 769 So. 2d 407, 408 (Fla. 4th DCA 2000). It is well-established law in Florida that a simple debt which can be discharged by the payment of money cannot generally form the basis of a claim for conversion or civil theft. *See* <u>Fla. Desk, Inc.</u>, 817 So. 2d at 1060; <u>W.C.P.S. of Fla., Inc. v. Standard Brands of Am.</u>, 707 So. 2d 416 (Fla. 4th DCA 1998); <u>Gambolati v. Sarkisian</u>, 622 So. 2d 47 (Fla. 4th DCA 1993); <u>Belford Trucking Co. v. Zagar</u>, 243 So. 2d 646 (Fla. 4th DCA 1970). Nevertheless, a claim for civil theft or conversion may lie where there is a contractual relationship between the parties if the alleged conduct goes beyond, and is independent from, a failure to comply with the terms of a contract. *See* <u>Burke v. Napieracz</u>, 674 So. 2d 756, 758 (Fla. 1st DCA 1996). A conversion claim for money additionally requires that the funds be specific and identifiable. <u>Allen v. Gordon</u>, 429 So. 2d 369 (Fla. 1st DCA 1983). The identification requirement ensures that a fund of money actually exists to pay a specific debt owed and the plaintiff "is not merely transforming a contract dispute into a conversion claim." <u>Tambourine Comercio Int'l SA v. Solowsky</u>, 312 Fed. App'x 263, 272 (11th Cir. 2009) (citation omitted). In <u>Belford Trucking Co.</u>, the court explained the criteria for deciding whether a conversion of identifiable money has taken place:

> There is nothing in the nature of money as personal property which makes it an improper subject of conversion so long as it consists of specific money capable of identification. To be a proper subject of conversion each coin or bill need not be earmarked, but there must be an obligation to keep intact or deliver the specific money in question, so that such money can be identified. Money is capable of identification where it is delivered at one time, by one act and in one mass, or where the deposit is special and the identical money is to be kept for the party making the deposit, or where the wrongful possession of such property is obtained. An example

is where a specific sum of money is to be held in constructive trust until the occurrence of a specified event.

* * *

The requirement that the money be identified as a specific chattel does not permit as a subject of conversion an indebtedness which may be discharged by the payment of money generally. [citations omitted].

Belford Trucking Co., 243 So. 2d at 648.

In this case, Plaintiff's third amended complaint does not allege the parties contemplated that Global Events would maintain Plaintiff's $150,000.00 in a separate account or in a trust or escrow account.  *See* Masvidal v. Ochoa, 505 So. 2d 555 (Fla. 3d DCA 1987) (civil theft and conversion can be asserted where a party embezzles funds from an escrow account).  Indeed, the allegations reflect that the funds received by Global Events from Plaintiff were unsegregated and placed in a general operating account.  Global Events' General Ledger also reflects that Plaintiff submitted the funds in four separate transactions, not "delivered at one time, by one act and in one mass." Belford Trucking Co., 243 So. 2d at 648.  Rather, $100,000.00 was paid on January 11, 2007; $25,000.00 was paid on January 16, 2007; $20,000.00 was paid on January 19, 2007; and $5,000.00 was paid on January 30, 2007 (Doc. 63-4 at 1).  Nor is there any allegation that the deposit(s) were "special" and "the identical money" was to be kept for Plaintiff or that the funds were wrongfully possessed. *Id*.  The fact that the total amount of $150,000.00 may be certain does not make it an "identifiable fund." Florida Desk, Inc., 817 So. 3d at 1060, 1061 ("[T]here is no evidence that there was any obligation on [the defendant's] part to keep intact or hold a specific fund to deliver to [the plaintiff]"); Gasparini v. Pordomingo, 972 So. 2d 1053, 1056 (Fla. 3d DCA 2008) (citation omitted) ("For money to be the object of conversion 'there must be an obligation to keep intact or deliver the specific money in question, so that money can be identified'"); Gambolati, 622 So. 2d at 49 (funds not identifiable because defendant "was seeking to enforce an obligation to pay money and nothing more . . . . [The defendant] was not required to pay to [plaintiff] the identical monies he collected"); Rosen v. Marlin, 486 So. 2d 623, 625 (Fla. 3d DCA 1986) ("This is not a case where a party

intentionally received a specifically identifiable sum of money knowing that he had no right to take it and who refused to give it back"). *Cf.* <u>Tambourine Comercio Int'l SA</u>, 312 Fed. App'x at 272–73 (concluding that jury could find that $6,000,000.00 delivered by former manager of corporation's bank accounts and held in trust by manager's lawyer and law firm was a specifically identifiable sum of money belonging to corporation). Plaintiff's allegations in this case therefore are not sufficient to meet the identification requirement Florida law demands. The court thus concludes that Plaintiff's conversion claim fails to state a claim for relief.[19] Plaintiff's civil theft claim is similarly deficient. As noted above, to establish a claim for civil theft, a party must prove that a conversion has taken place and that the accused party acted with criminal intent. *See* <u>Gersh</u>, 769 So. 2d at 408. Because the court has concluded that the allegations of the third amended complaint do not state a claim for conversion, it likewise concludes the allegations are insufficient to state a cause of action for civil theft. *See* <u>Gasparini</u>, 972 So. 2d at 1056 ("Since we have found that there was no factual basis to support a claim for conversion, it stands to reason therefore, that there can be no cause of action for civil theft").

For the foregoing reasons, the court concludes that Plaintiff's allegations of fact regarding Count I (fraud in the inducement), Count II (conspiracy to defraud), and Count IV (unjust enrichment) are well-pleaded but that the allegations as to Count III (conversion) and Count X (civil theft) are not. The court therefore proceeds to consideration of Plaintiff's damages on Counts I, II, and IV.

On the record before it, the court is able to determine damages in this case without a hearing. *See* <u>Sec. & Exch. Comm'n</u>, 420 F.3d at 1231, 1232 n.13. Based on Plaintiff's declaration (Doc. 102-1), and consistent with Plaintiff's request in his amended motion for entry of default judgment (Doc. 98 at 25), Plaintiff has shown he is entitled to damages in the amount of $150,000.00. Entry of

---

[19] The court notes Plaintiff's contention that "[t]here is no dispute that the money is owed to Plaintiff. Defendant Chisholm admitted in his deposition testimony that no contingency was provided for in the transfer of interest and that 'if Global Events had the money, we would pay Ray'" (Doc. 98 at 24). As noted above, Florida law provides that a simple debt which can be discharged by the payment of money cannot generally form the basis of a claim for conversion or civil theft. *See* <u>Fla. Desk, Inc.</u>, 817 So. 2d at 1060.

default judgment against Global Events in Plaintiff's favor in the amount of $150,000.00 therefore is warranted. Plaintiff seeks no pre or post judgment interest as to Counts I, II, and IV, and thus none should be awarded. Plaintiff has not briefed the issue of his entitlement to attorneys' fees and costs in the event of entry of default judgment in his favor on Counts I, II, and IV. Therefore, at such time as the district court may adopt this report and recommendation, this court shall direct Plaintiff to file an appropriate motion for attorney's fees and costs, with memorandum and documentation in support.

### Conclusion

For the reasons set forth in the body of this report, the court denies Chisholm's motion for leave to file out-of-time a response to Plaintiff's motion for entry of default judgment (Doc. 114). Additionally, the court recommends that Plaintiff's motion for entry of default judgment against Defendant Chisholm (Doc. 100) be denied and that Plaintiff's amended motion for entry of default judgment against Defendant Global Events (Doc. 98) be granted as to Counts I, II, and IV of the third amended complaint, in the amount of $150,000.00.

Accordingly, it is **ORDERED**:

1.      The docket shall reflect that the stay of this case, as it pertains to Defendant Global Events, is lifted and that Plaintiff's amended motion for default judgment against Defendants CPCE and Global Events (Doc. 98) is reinstated as to Defendant Global Events only.

2.      Defendant Chisholm's motion for leave to file out-of-time a response to Plaintiff's motion for entry of default judgment (Doc. 114) is **DENIED**.

3.      The clerk shall enter a default pursuant to Fed. R. Civ. P. 55(a) against Defendant Global Events.

4.      Should the district court adopt this report and recommendation, the clerk shall immediately refer this matter to the undersigned for further proceedings.

And it is respectfully **RECOMMENDED**:

1.      That Plaintiff's motion for entry of default judgment against Defendant Chisholm (Doc. 100) be **DENIED**.

2.      That Plaintiff's amended motion for entry of default judgment against Defendant Global Events (Doc. 98) be **GRANTED** in part:  the clerk should enter default judgment in Plaintiff's favor against Defendant Global Events as to Counts I, II, and IV of the third amended complaint in the amount of $150,000.00.

At Pensacola, Florida this 4th day of May 2010.


/s/ *Elizabeth M. Timothy*                                        
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


**<u>NOTICE TO THE PARTIES</u>**

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control</u>.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**